# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

**FILED**

**FEB 2 8 2019**

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

|  |  |
|---|---|
| **In the Matter of the Search of**<br><br>ten (10) electronic devices, **target devices #1-#10**, contained, described, and photographically depicted in ATTACHMENT A (hereinafter, collectively: **target devices**) Investigators seized the **target devices** seized from **Derrick FREEMAN**. The **target devices** are currently in the custody of the DEA, within the Eastern District of Missouri. | ) ) ) ) ) ) ) ) Case No. 4:19 MJ 6074 PLC |

## APPLICATION FOR A SEARCH WARRANT

I, ___James Gaddy___, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

ten (10) electronic devices, **target devices #1-#10**, contained, described, and photographically depicted in ATTACHMENT A (hereinafter, collectively: **target devices**) seized from **Derrick FREEMAN.**

located in the _____EASTERN_____ District of _____MISSOURI_____, there is now concealed

see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    ✓ evidence of a crime;

    ✓ contraband, fruits of crime, or other items illegally possessed;

    ✓ property designed for use, intended for use, or used in committing a crime;

    ❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, U.S.C., §§ 841(a)(1), 846 | Possssion/Conspiracy to possess with intent to distribute |
| Title 18, U.S.C. §§ 924(c), 1956, 1957 | controlled substance(s); firearms offenses; money laundering |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

    ✓ Continued on the attached sheet.

    ❑ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

JAMES GADDY, Task Force Officer
DEA

*Printed name and title*

**Sworn to before me and signed in my presence.**

Date: _____February 28, 2019_____

*Judge's signature*

City and State: ___St. Louis, MO___

Hon. Patricia L. Cohen, U.S. Magistrate Judge
*Printed name and title*
AUSA:   John R. Mantovani

FILED

FEB 2 8 2019

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

James Gaddy, being duly sworn, deposes and says that he is a Task Force Officer with the Drug Enforcement Administration, duly appointed according to law and acting as such.

## INTRODUCTION

I have been a deputized Task Force Officer with the Drug Enforcement Administration (DEA) since January 2010 and am currently assigned to an Enforcement Group of the St. Louis Division Office.  Prior to my DEA assignment, I was a sworn police officer with the St. Charles County Police Department and Breckenridge Hills Police Department for approximately 20 years. During the course of my law enforcement experience I have participated in numerous investigations involving controlled substances.  I have conducted investigations of a variety of illegal drug-trafficking and money-laundering organizations. I have participated in investigations which led to the seizure of illegal drugs, weapons, and assets derived from the sale of illegal drugs, and the subsequent felony arrests of those individuals involved.  I have participated in numerous drug-related training courses throughout my law enforcement career.  I am familiar with and have used normal methods of investigation, including, but not limited to, visual and electronic surveillance, questioning of witnesses and defendants, the use of search and arrest warrants, the use of informants, the use of pen registers, the utilization of confidential sources and undercover agents, and the use of court-authorized wire and electronic intercepts.

## PURPOSE OF AFFIDAVIT

This Affidavit is submitted in support of an application for the issuance of a search warrant for the ten (10) electronic devices, **target devices #1-#10**, contained, described, and photographically depicted in ATTACHMENT A (hereinafter, collectively: **target devices,**) to

1

search for the records and data detailed in ATTACHMENT B, which constitutes evidence of the crimes described herein. Investigators seized the **target devices** seized from **Derrick FREEMAN** ("**FREEMAN**") (date of birth: September 29, 1992; social security number xxx-xx-5987). Investigators seized the **target devices** from **FREEMAN's** person following **FREEMAN's** attempted evasion from law enforcement during the execution of a federal search warrant within St. Louis County and the Eastern District of Missouri on February 26, 2019.

The **target devices** are currently in the custody of the DEA, within the Eastern District of Missouri. **FREEMAN** was arrested, charged by federal complaint with conspiracy to distribute fentanyl and possession of firearm in furtherance of a drug trafficking crime, as set forth below. A motion for **FREEMAN's** pre-trial detention is pending with this review Court.

It is my opinion as an experienced, trained narcotics investigator that there exists probable cause to believe that the **target devices** will contain evidence of violations of Title 21, United States Code, Sections 841 and 846 (Possession with Intent to Distribute/Distribution of Controlled Substances and/or Conspiracy). The controlled substances which are the primary focus of this investigation are heroin, a Schedule I controlled substance and fentanyl, a schedule I controlled substance. In addition, based on the investigation set forth herein, I believe the **target devices** will also contain evidence of violations of Title 18, United States Code, Sections 924(c) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime), and 1956 and 1957 (money laundering and conspiracy to commit money laundering).

The facts and information set forth in the Affidavit are based upon my personal knowledge obtained during the course of the investigation, information reported to me by other agents and employees of the DEA and other law enforcement agencies, my review of reports, toll analysis,

pen register analysis, interception of wire and electronic communications, financial analysis, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of securing a search and seizure warrant in relation to the **target devices**, it does not include each and every fact known to me concerning this investigation, and sets forth only those facts believed necessary to establish probable cause that violations of Title 21, U.S.C. §§ 841(a)(1), 846, 843(b), 848, 1956 and 1957 have occurred, are occurring, and will occur.

## INVESTIGATION AND PROBABLE CAUSE.

### A. Background.

In March 2018, DEA St. Louis initiated an investigation into a large-scale drug distribution based in the St. Louis County and St. Louis City area capable of distributing large quantities of cocaine, heroin, and fentanyl throughout the St. Louis Metropolitan area. During the course of the investigation, investigators identified **Derrick FREEMAN (FREEMAN)** as being a multi-ounce heroin and fentanyl distributor. Also during the investigation, investigators have been granted court authorization to intercept and monitor communications from other co-conspirators cellular devices. On or about February 11, 2019, investigators intercepted **FREEMAN**, using Missouri-based telephone number (314) 585-1618 speaking with co-conspirators relative to drug trafficking activities. At the present time, it is unknown if the cellular device (314) 585-1618 is one the **target devices** that is the subject of this affidavit. However, the intercepted conversation demonstrates **FREEMAN**'s use of cellular devices to conduct his drug trafficking activities. Further, during the investigation, investigators observed **FREEMAN** utilizing a blue in color Kia Optima sedan and black in color Dodge Ram truck.

3

On or about February 11, 2019, investigators learned the above-described Kia frequents an apartment complex off Lucas Hunt within St. Louis County, Missouri. Days following February 11, 2019, investigators conducted intermittent surveillance of the apartment complex in the area of Ventura Drive. During the late night/early morning hours and each night investigators observed the Kia parked directly in front of 9602 Ventura Drive, building 30. Investigators were later able to determine that **FREEMAN**'s residence is apartment 2 in that building. **FREEMAN** resides at in that apartment with a woman believed to be his paramour, Keyontay STEPNEY (STEPNEY), and two small children. For the following week, investigators monitored **FREEMAN**'s residence and observed him come and go from the apartment complex numerous times. **FREEMAN** was often carrying a bag to and from the apartment.

## B. Observed Fentanyl Distribution by FREEMAN.

On February 19, 2019, investigators, including DEA air support, established early morning surveillance in the vicinity of **FREEMAN**'s residence. At approximately, 9:30am, investigators observed STEPNEY and **FREEMAN** escorting two small children from the common door of 9602 Ventura Drive, building 30 to the previously mentioned black in color Dodge Ram. Investigators observed STEPNEY and **FREEMAN** place the two small children inside the Dodge Ram. STEPNEY then entered the driver's seat and departed the area. **FREEMAN** re-entered the apartment. Investigators maintained surveillance of the apartment.

At approximately 10:00am, investigators observed the Dodge Ram being driven by STEPNEY return. STEPNEY re-entered the apartment carrying one small child inside.

At approximately 10:30am, investigators observed a black in color Mercedes Sports Utility Vehicle (SUV) pull up and park directly in front of the common entrance to **FREEMAN**'s

4

apartment building. Moments later, investigators observed **FREEMAN** exit the common door and direct the driver of the Mercedes SUV to allow **FREEMAN** to drive the vehicle. **FREEMAN** entered the Mercedes moments later STEPNEY exited the common door of the building. STEPNEY then handed **FREEMAN** an unknown item through the driver's door. Moving surveillance was initiated on the Mercedes SUV immediately upon its departure from the apartment complex.

Moving surveillance led investigators to the 8400 block of Lowell Lane in the St. Louis City neighborhood of Baden. While in the 8400 block of Lowell Lane, investigators observed the Mercedes SUV with **FREEMAN** as the driver pull up to three separate vehicles and conduct hand-to-hand transactions car-to-car. From training, experience, and the instant investigation, investigators are confident the hand-to-hand transactions consisted of drugs in exchange for currency.

Investigators continue to maintain moving surveillance of the Mercedes SUV, which now led investigators to the St. Louis County neighborhood of Berkeley, Missouri. Investigators observed the Mercedes SUV with **FREEMAN** as the driver pull into and drive through the parking lot of the Steak-N-Shake restaurant on Natural Bridge. As the Mercedes SUV was travelling through the parking lot, investigators observed three separate vehicles begin to caravan with the Mercedes SUV. Investigators witnessed the Mercedes SUV circle several city blocks, with the three separate vehicles continuing to following the Mercedes SUV. Eventually, the three separate vehicles pulled over. The Mercedes SUV made a U-turn and travelled back in the direction of the three separate vehicles. Again, investigators observed the Mercedes SUV conduct hand-to-hand transactions of suspected narcotics with the occupants of the three separate vehicles. One of these vehicles was a white Dodge Ram occupied by two males. Following the hand-to-hand

5

transactions, the Mercedes SUV with **FREEMAN** driving then departed the area in a high rate of speed.

Investigators then focused their attention on a white in color Dodge Ram who met with the Mercedes SUV. Investigators followed the Dodge Ram to the area of Interstate 55 at or near the Arsenal exit in the City of St. Louis. Investigators effected a traffic stop of the Dodge Ram and made contact with the driver and front passenger. Investigators informed the occupants of the on-going investigation, at which time the driver and front passenger fully wished to cooperate with law enforcement. Each handed over to investigators several capsules containing fentanyl. The occupants were interviewed about their purchasing of the fentanyl. Each of these individuals stated they bought $50.00 worth of fentanyl from the driver of the Mercedes SUV which investigators observed to be **FREEMAN**. Furthermore, the occupants provided investigators Missouri-based telephone number (314) 303-2256 as being the telephone directed to call in order to acquire fentanyl. Upon the seizure of the **target devices** on February 26, 2019, investigators were able to identify (314) 303-2256 as **target device #10**, the device the occupants called in order to ascertain fentanyl on February 19, 2019.

## C. Search Warrant Execution and Recovery of the Target Devices.

On February 21, 2019, United States Magistrate Judge, Honorable Shirley P. Mensah, Eastern District of Missouri, authorized a search and seizure warrant **FREEMAN**'s and STEPNEY's at 9602 Ventura Drive, building 30, apartment 2, St. Louis, Missouri 63136 (hereinafter the "target location.") under cause no: 4:19 MJ7075 SPM.

During the early morning hours of February 26, 2019, DEA investigators, St. Louis County Street Team, and DEA Air Support established surveillance in the vicinity of the target location in order to execute the Federal search warrant. As investigators assembled in the area, investigators

6

immediately noticed the above described Mercedes SUV and Dodge Ram.  Investigators monitored the target location and waited to execute the search warrant until the departure of the small children.

At approximately 9:40am, investigators observed **FREEMAN** exit the target location building carrying a black in color tote bag, walking directly towards the Mercedes SUV.  To attempt to avoid a vehicle pursuit, investigators attempted to conduct a vehicle detainment and block the Mercedes SUV in with law enforcement vehicles.  However, **FREEMAN**, the sole occupant of the Mercedes SUV, was able to maneuver around the detainment and flee at a high rate of speed.  As **FREEMAN** fled, he entered a construction area with workers present and placed those workers in immediate apprehension of injury.  As the flight continued, the Mercedes SUV was disabled due to the extensive damage and stopped in the area of 8409 Sunbury, St. Louis, Missouri.   **FREEMAN** then exited the vehicle and began to flee on foot through several neighborhood yards.  Utilizing DEA Air Support, investigators were able to take **FREEMAN** into custody hiding within a wooded area in the area of Sunbury at Osborn, St. Louis, Missouri.  **FREEMAN** was found to still be in possession of the black tote bag he left the target location with.  The black tote bag contained the following:

1) Numerous capsules containing fentanyl with a gross gram weight of 26.2 grams;

2) Approximately $9000.00 United States currency

3) **Target Devices 1-10** (more fully described in Attachment A); and

4) **FREEMAN**'s Missouri driver's license.

Investigators also conducted a check of the Mercedes SUV which **FREEMAN** fled in and located on the vehicle's floorboard a Glock 30 .45 caliber semi-automatic pistol (Serial Number:

7

YWK524) containing 10 rounds of .45 ACP ammunition in the magazine and one live round in the chamber of the weapon. **FREEMAN** was transported to DEA St. Louis Division office.

As majority of investigators were pursuing the Mercedes SUV being driven by **FREEMAN**, DEA Special Response Team ("SRT") executed the Federal search warrant as STEPNEY and the two small children were exiting the target location. DEA SRT conducted a protective sweep and determined no other person(s) were within the apartment.

Investigators then conducted a search of **FREEMAN**'s residence and located the following:

1) Clear bag of powdery substance believed to be fentanyl;

2) Three capsules believed to contain fentanyl;

3) Century Arms 7.62x39mm AK-47 style semiautomatic rifle;

4) Inter Ordinance 7.62x39mm semi-automatic pistol, loaded and chambered;

5) Several AK-47 style rifle/pistol magazines including a 50 round drum magazine;

6) A digital scale;

7) Approximately $2000.00 United States currency; and

8) Mail addressed to **Derrick FREEMAN** at the target location.

## D.  Criminal Charges Issued.

On February 26, 2019, the Honorable Patricia L. Cohen, United States Magistrate Judge for the Eastern District of Missouri, issued a complaint charging **FREEMAN** with conspiracy to distribute fentanyl and possession of one or more firearms in furtherance of a drug trafficking crime under cause 4:19-MJ-6051 PLC.

8

## E. Training and Experience of Investigative Team and Use of Target Devices.

Based on my training, experience, prior Title-III investigations, de-briefings of involved parties, and instant investigation, that drug traffickers are known to compartmentalize the use of multiple telephones. As an example, a subject will use a certain telephone to contact sources of supply, another telephone to contact couriers, other telephones to contact underlings, so forth and so on. During other aspects of this investigation, the de-briefing of co-conspirators and captured court authorized wire interceptions have revealed that the above methods are employed to thwart law enforcement's ability to detect members of a drug trafficking organization and conduct electronic surveillance on co-conspirators. Based on the sheer number of cellular telephone seized from **FREEMAN**, namely ten (10) separate **target devices**, it is plausible to believe that **FREEMAN** and other members of the criminal organization **FREEMAN** is associated with, are compartmentalizing the use of their telephones.

Further, through wire intercepts of **FREEMAN** using Missouri-based telephone (314) 585-1618 to communicate with co-conspirators and the seizure of **target devices 1-10**, investigators are confident **FREEMAN** utilized and maintain multiple **cellular devices** in order to thwart law enforcements ability of monitor and/or track **FREEMAN's** devices and to compartmentalize the hierarchy of the organization.

## BACKGROUND ON ELECTRONIC MEDIA

Based on my training and experience, as well as discussions I have had with other trained agents and investigators, I know that mobile telephones contain a variety of stored electronic data. For example, mobile phones maintain call logs that record the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, mobile

9

telephones often referred to as "smart phones" offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet, including applications or "apps," such as social media apps, including Facebook. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

Digital cameras, like those seized in this investigation record pictures digitally, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

The development of computers, digital cameras, mobile telephones and the Internet has changed the way in which individuals involved in illegal drug distribution conspiracies, and related activities, such as firearms offenses and violence, interact with one another. Computers and electronic storage devices such as cameras, tablets, and mobile phones serve various functions in connection with illegal drug distribution conspiracies, and related activities, such as firearms offenses and violence. They include: (1) the ability for criminal associates to communicate with one another and with other conspirators via, mobile phones and voice call, text, or email; (2) the

storage of pictures, images, electronic communications, records and other evidence of the crimes committed; and (3) the devices themselves operate as instrumentalities of the crimes.

Individuals involved in illegal drug distribution conspiracies, related firearms offenses and homicides, and money laundering activities can store information and photographs related to their criminal activities. These individuals can transfer and store photographs directly to and from phones, tablets, and computers. These individuals can search for victims over the internet on many of these devices.

As is the case with most digital technology, communications by way of computer, mobile phone, tablet, or other similar electronic media can be saved or stored on the device. Storing such information can be intentional, i.e., by saving an e-mail as a file on a computer or tablet, or saving the location of one's favorite websites such as "bookmarked" or "favorite" files. Digital information can also be retained unintentionally, such as traces of the path of an electronic communication that may be automatically stored in many places (e.g., temporary files or internet Service Provider client software, among others).

The forgoing, computer-related items sought to be searched include the following:

     a.    Mobile devices - advances in mobile technology, such as "smart" phones, have made it possible for persons or representatives of businesses and criminal organizations to conduct activities on personal mobile devices, such as telephones, or personal electronic tablet devices, such as an iPad, which are capable of sending electronic communications including electronic mail and electronic "text" messages. These devices also make it possible for an individual to access the Internet to operate email, websites, or store digital and electronic information;

     b.    Electronically Stored Data - Any and all such data concerning the sales of controlled substances and drug paraphernalia, laundering of monetary instruments, engaging in monetary transactions in property derived from specified unlawful activity, and unlawful flight to avoid prosecution. Any and all identification documents and such data consisting of information stored on back-up tapes, computer hard drives, and/or any other form or manner;

11

c.     Passwords and Data Security - Computer passwords and other data security devices are designated to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming codes. A password (a string of alphanumeric characters) usually operates as a sort of digital key to "unlock" particular date security devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

I have been made aware from computer recovery specialists with experience in these matters, that to properly retrieve and analyze all cell phone data, to document and authenticate such data and to prevent the loss of the data either from accidental or deliberate destruction would require laboratory analysis by a qualified specialist.

## CONCLUSION

Based upon the training and experience of the investigative team and the investigation described herein, there is probable cause to conclude that, in the digital media to be searched within the **target devices**, there will be located evidence of a crime, contraband, the fruit or instrumentalities of a crime, of one or more violations of Title 21, United States Code, §§ 841(a) and 846 (unlawful manufacture, distribution, or possession with intent to distribute a controlled substance and conspiracy), and evidence relative to violations of Title 18, United States Code, §§ 924(c) (possession of a firearm in furtherance of a drug trafficking offense), 1956, and 1957 (money laundering),

Accordingly, I respectfully request the issuance of a warrant to search the **target devices** described in ATTACHMENT A for the records and data described in ATTACHMENT B.

## REQUEST FOR SEALING

In view of the ongoing nature of the investigation, and the risk of harm to informants, cooperating witnesses, to agents, and to the investigation, which would exist should the

information in this affidavit be prematurely disclosed, I respectfully request that this affidavit and

associated records concerning this search be sealed until further order of the Court.

2/28/2019
DATE

JAMES GADDY
Task Force Officer
Drug Enforcement Administration

SUBSCRIBED and SWORN to before me this ___28___ day of March, 2019.
February

PATRICIA L. COHEN
United States Magistrate Judge
Eastern District of Missouri

13

## ATTACHMENT A: TARGET DEVICES 1-10.

**Target Device 1:**

**Black LG Model Number: LM-X210MA, IMEI: 352737-10-788108-9**

**Target Device 2:**

**Black LG Model Number: LM-X210MA, IMEI: 352737-10-738071-0**

**Target Device 3:**

**Black iPhone (No visible Model Number or Serial Number)**

**Target Device 4:**

**White iPhone (No visible Model Number or Serial Number)**

**Target Device 5:**

**Black LG IMEI: 351603102364045**

**Target Device 6:**

**Black iPhone (No visible Model Number or Serial Number)**

**Target Device 7:**

**Silver Samsung IMEI: 359797090352483**

**Target Device 8:**

**Black LG IMEI: 355380-09-089833-6**

**Target Device 9:**

**Black Verizon Samsung Flip-phone, Model Number: SCH-U360**

**Target Device 10:**

**Black LG IMEI: 355380-09-090300-3**





























## ATTACHMENT B

A.     All stored electronic communications, including text messages, and other files reflecting and including communications, content, and header information to or from **the subject electronic devices**, including records stored on backup media for **the subject electronic devices;**

B.     All records and other evidence, connection logs, and records of user activity for **the subject electronic devices**, including:

      1.     Connection date and time;
      2.     Disconnect method and time;
      3.     Method of connection (e.g., telnet, ftp, http);
      4.     Date transfer volume;
      5.     User name associated with the connection;
      6.     Telephone caller identification records; and
      7.     Other connection information, such as:
          a.     Any and all telephone numbers, addresses, names or contacts associated with the connection;
          b.     Any and all data which might be information from a personal calendar or day planner associated with the connection; and
          c.     Any and all data regarding wire or electronic communications, i.e., e-mail, text messages, address books, direct connect numbers, photographs or other images, saved messages including voice and draft messages associated with the connection.

C.     Any other records or information related to the above-referenced names and user names, including, without limitation, correspondence, billing records, records of contact by any person or entity, method of connection to the destination telephone, and any other subscriber information.

D.     All documents, data records, photographs, videos, correspondence (including e-mail messages and electronic messages) ledgers, and information relating to the transportation, ordering, purchasing and distribution of controlled substances and drug paraphernalia;

E.      Any and all documents, photographs, records and information pertaining to currency and other assets accumulated through drug trafficking activity.

F.     Any and all documents, data, and records relating to the possession, dominion and control of the of the computer systems and storage devices to be searched;

G.     Any and all computer passwords and other data security devices designed to restrict access to or hide software, documentation or data.   Data security devices may consist of hardware, software, or other programming codes.

H.     Any and all Global Positioning System data.